Jeremy L. Friedman, CA Bar No. 142659
LAW OFFICE OF JEREMY L. FRIEDMAN
2801 Sylhowe Road
Oakland, CA 94610
510-530-9060
Fax: 510-530-9087

Alan J. Reinach, Esq. State Bar No. 196899
CHURCH STATE COUNCIL
2686 Townsgate Road,
Westlake Village, CA 91359
805.413-7398
Fax: 805.497-3828
E-mail: ajreinach@churchstate.org
Jonathon S. Cherne, State Bar No. 281548, of counsel

Attorneys for Plaintiff SHANNON CROSS

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON CROSS,<br><br>                Plaintiff,<br><br> v.<br><br>CENTRAL CONTRA COSTA TRANSIT AUTHORITY<br>                Defendant. | **Civ. No.**<br><br>**COMPLAINT FOR ECONOMIC and COMPENSATORY DAMAGES, AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>1.   Discrimination (race and religion) – Title VII and FEHA<br>2.   Retaliation – Title VII and FEHA<br>3.   Harassment – Title VII and FEHA |

-1-

**CROSS V CCCTA**                                                    **COMPLAINT**

# INTRODUCTION

1. This is an action for damages arising out of defendant Central Contra Costa County (CCCTA)'s discrimination on the basis of religion and race, in violation of the California Fair Employment and Housing Act, Government Code § 12940 *et. seq.,* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff Shannon Cross is an African-American Muslim woman who was employed at CCCTA as a transit operator, and was subject to harassment and discrimination on account of her religious practice of wearing her Hijab (head scarf). Soon after plaintiff complained to Human Resources about the harassment and discriminatory treatment, defendant terminated plaintiff's employment, citing pretextual grounds.

# PARTIES

2. Plaintiff Shannon Cross is a Muslim American woman who resides in California and was formerly employed by CCCTA until her termination on or about June 07, 2019. At all times relevant herein, plaintiff is and was protected by Title VII, FEHA and Article 1 § 8 of the California Constitution; in that, she is a member of a protected class on account of her religion, Muslim, and her race, African-American.

3. Defendant Contra Costa County Transit Authority (CCCTA) is a joint powers agency of certain California local public entities, including the County of Contra Costa and cities in that county. It is a local public entity which operates a public transportation system in Contra Costa County.

4. Defendant is an employer of more than five hundred (500) employees.

# JURISDICTION AND VENUE

5. This action arises under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e *et. seq.* and the California Fair Employment and Housing Act, Government Code §

12940. Jurisdiction of this Court is based on a claim of deprivation of Federal Civil Rights and invoked pursuant to the following statutes:

    a. 28 U.S.C. § 1331, giving district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States; and

    b. 28 U.S.C. § 1343, giving district courts original jurisdiction over actions to secure civil rights extended by the United States government.

Supplemental jurisdiction is proper with respect to Plaintiff's state law claims.

6. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) because Defendant resides in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff timely filed a charge with the California Department of Fair Employment and Housing on December 31, 2019, case number 201909-07576817, which was co-filed with the Equal Employment Opportunity Commission ("EEOC"), Charge number 37A-2020-01141-C. This complaint preserved claims of harassment, discrimination, and retaliation on the basis of religion and race against the Defendant herein.

8. The DFEH issued a Notice of Case Closure and Right to Sue on November 30, 2020. Plaintiff has therefore exhausted her administrative remedies, and this Complaint is timely filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

## DEMAND FOR JURY TRIAL

9. Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS

10. Plaintiff Shannon Cross is an African American Muslim woman who was hired to work as a transit operator by Defendant. Cross began her work on or about July 23, 2018.

During her employment, Cross performed her work according to the employer's requirements, and she was well qualified for her position.

11. Cross wears a head covering known as a Hijab as part of her Muslim faith. Her customary practice is to wear a scarf covering, which can be worn in one of various alternative traditional styles that involve covering her head. When she started training at CCCTA, plaintiff was unsure how she would be received at work if she was seen openly wearing her Hijab, so she wore a wig style head covering at first, so as not to draw attention to herself.

12. During her period of orientation and training, one of Cross' coworkers (who is not Muslim), Terrice Hampton, came to class one day wearing a turban style head covering, similar to how Muslim women wear the Hijab. The trainer, Cheryl Robinson, informed the class that the wearing of such head wear was forbidden and would result in termination, and Ms. Hampton was sent home to change.

13. Since Ms. Robinson had explained the rule as a matter of company policy, Cross was concerned that she would not be permitted to wear her Hijab as required under her religious faith, and she continued to wear her wig style head covering until she had completed probation. She decided she would wait until after her probation period had ended before inquiring further about the Authority's no-Hijab policy.

14. Due to a shortage of bus operators, CCCTA determined to cut short Cross' training period, reducing it from seven (7) to four (4) weeks.

15. Cross completed her probationary period of employment on January 23, 2019. Soon thereafter, she informed her supervisory, Preston Ennis, that she would prefer to wear her traditional Muslim head covering while operating the bus for CCCTA, and she asked about the company's policy. Mr. Ennis informed plaintiff that he was unaware of whether or not that would be permitted, and he told her that he would get back to her. Soon thereafter, however, Mr. Ennis left CCCTA's employment, and Cross approached Christina Gonzales of the Human

Resources department. Ms. Gonzales stated that she too was unaware of whether employees would be permitted to wear religious head covering, but would check and get back to her.

16. On February 12, 2019, Gonzales approached Cross and provided her with a memo in writing approving her religious accommodation request to wear a "Hijab headpiece" "consistent with the regulatory solid color choices stipulated in the Authority's uniform policy." Plaintiff understood this policy to allow her to wear her Hijab at work, but on the days where transit operators were required to wear uniform colors – black, brown, gray, maroon or burgundy --  plaintiff would have to restrict her headwear to one of those colors.

17. About a week later, Cross worked at her job wearing a maroon Hijab, which matched her uniform that day. After Cross completed her shift and was leaving work, one of her supervisors, Sophia (last name unknown) ran after her and chased her down while Cross was walking across the parking lot. Sophia then chastised Cross for wearing her Hijab, telling her she was not permitted to wear it. When Cross responded that she had permission, Sophia admitted she knew that, but then scolded her for wearing a Hijab of the wrong color. Since plaintiff had in fact worn a head-covering of the appropriate color, plaintiff knew that her supervisor had reprimanded her for a false reason, even though she knew that she was wearing the head covering for religious reasons.

18. Cross was deeply humiliated and ashamed at being treated this way. Instead of addressing an alleged performance issue professionally, privately in an office, Sophia treated Cross very disrespectfully and rudely, addressing her in an insulting and demeaning manner.

19. Meanwhile, Cross had begun to endure mockery, snickering and unwelcome comments from coworkers about her desire to wear a Hijab at work. In a break-room, with several co-workers and Sophia the supervisor present, one of the male bus drivers made a crack in front of other employees, saying he would like to wear his cap as part of his religion. It was said in a mocking tone with Cross nearby, clearly intended to make fun of her religious

-5-
**CROSS V CCCTA**                                                                                      **COMPLAINT**

practice. Sophia clearly heard the comment, and responded with a comment of her own, but took no action to stop or remedy the harassing behavior.

20. Cross promptly returned to Gonzales in human resources to complain about the harassment. She told Gonzales she was offended by what the supervisor had said to her in the parking lot, and what the fellow-employees did in the break room with that same supervisor present. Gonzales stated that plaintiff had permission wear her Hijab at work, but she took no action to address Cross' complaints, or to prevent further harassment.

21. Cross continued to wear her Hijab to work and she continued to endure comments from others in the workplace and to experience a hostile work environment because of her religious practices.

22. One day in mid-April, on a Friday – the one day when transit operators were not restricted to uniform colors and were allowed to "wear anything" – Cross experienced another reprimand from a supervisor over her Hijab, this time by supervisor Aileen, someone who appeared to be close friends with supervisor Sophia. On that day, plaintiff wore a grey Hijab that had a series of beads woven into the design. Aileen approached Cross and told her she "could not wear that thing on your head," referring to her sacred Hijab as a "thing." As she said this, she gave Cross a look of utter disgust.  Cross was deeply offended and upset by her supervisor's comment and conduct, which again caused Cross to feel shame and anger.

23. The following day, Cross reported Aileen's harassment to Human Resources Director Lisa Rettig. Cross showed Rettig the Hijab she had worn the prior day and asked whether it would be okay to wear that Hijab on a Friday. Rettig responded that it would be. Cross then explained how Supervisor Aileen had criticized plaintiff for wearing that very covering, how she had shown disgust at Cross wearing her Hijab, and had called it a "thing." Cross also told Lisa Rettig about the comments of her coworkers.

24. Despite Rettig's role as Director of Human Resources, the CCCTA manager did

not inform or instruct Cross in how to file a formal written complaint of harassment and/or discrimination. Nor did she inform plaintiff that she would undertake any investigation or would take any measure to remedy the treatment plaintiff had received. Instead, Rettig just shrugged it off, and said "some people are just ignorant."

25. Soon after her complaint to Rettig, CCCTA determined to terminate plaintiff's employment. On or about May 30, 2019, while performing her work, a minor collision occurred, wherein the rear of bus Cross was operating clipped a bicycle. The collision caused no injuries, and minimal damage. Pursuant to CCCTA rules and procedures, Cross reported the incident immediately, and she was permitted to complete her bus route that day. By company policy, the collision was not considered an accident that required Cross to submit to drug and alcohol testing, which would have been required if someone required medical attention, or if the bus itself was rendered inoperable.

26. At the end of Cross' shift that day, supervisor Aileen issued Cross a disciplinary letter giving her "Notice of Intent to Terminate – Unprofessional/Unsafe Behavior." Aileen was the same supervisor whom Cross had complained about to Lisa Rettig in Human Resources just a month earlier, on account of her hostility and harassment regarding Cross wearing a Hijab.

27. Cross contested her termination as a deprivation of property rights in public employment, and a "Skelly" hearing was conducted on June 5. Supervisor Aileen represented the Defendant, and the hearing served only as a "rubber stamp" for the employer's decision. On Cross's behalf, the union then pursued a grievance of the termination involving reviews by CCCTA's managers: Yvette Glenn at Step 2 and William Churchill at Step 3. Even though the union demonstrated that the traffic collision did not warrant a termination, and that CCCTA had violated its own policy of progressive discipline in terminating Cross for a minor traffic accident (which was her first occurrence), the termination decision was upheld.  CCCTA's

-7-
**CROSS V CCCTA**                                                                                    **COMPLAINT**

management did not give due consideration to the harassment, discrimination and retaliation Cross had received because of her religion and because of her complaints to Human Resources. Nor did CCCTA offer plaintiff a "last-chance" letter that the employer has provided to other employees who had experienced similar, if not worse, transgressions.

28. CCCTA's decision to terminate the employment of Cross was because of discriminatory animus on the basis of Cross's race and her religion, and to retaliate against her, to punish her and discourage others from complaining about discrimination. CCCTA perpetuates this discrimination and knowingly permits a hostile work environment for African Americans and Muslims, and it does not treat such employees in the same manner that it treats non-African American and non-Muslim employees. For example, unprotected non-class individuals are not harassed about wearing personal clothing and are not terminated for minor collisions. Similarly, non-African American and non-Muslim employees are provided "last chance" letters by CCCTA, even though such a letter was not offered to Cross in this case.

29. As a direct and proximate result of CCCTA's actions as alleged herein, defendant has breached its duties imposed on all employers as established by statute.

30. As a direct and proximate result of the hostile work environment and plaintiff's termination, plaintiff has suffered and will continue to suffer lost wages, salary increases, earnings capacity and other benefits of employment, in an amount to be proven at trial.

31. As a further proximate result of defendant's unlawful actions, plaintiff has suffered emotional pain, humiliation, mental anguish, and emotional distress. This has included Cross being in treatment with a psychologist for emotional distress. She has had difficulty coping with being a victim of racism and religious discrimination.

**FIRST CAUSE OF ACTION**
**Discriminatory Termination – Race and Religion –**
**In Violation of California Fair Employment & Housing Act**
**Government Code § 12940 *et. seq.*, and Title VII of the Civil Rights Act of 1964**

32. Plaintiff re-alleges and incorporates herein by reference all of the above paragraphs, as though fully set forth herein.

33. Plaintiff was at all times herein an employee covered by FEHA and Title VII, prohibiting discrimination in employment on the basis of race and religion, and a member of a protected class based on her race, African American, and her religion, Muslim.

34. Defendant was at all times herein an employer subject to FEHA and Title VII.

35. Plaintiff Cross was at all times relevant herein qualified to perform her duties as a bus driver. She has the required Class B Driver's license, and successfully completed her training.

36. On information and belief, Cross was the only Muslim woman employed at that time by Defendant and was also a minority as an African-American woman.

37. Despite Cross' qualifications to perform her duties as a bus driver, Defendant terminated her, thereby subjecting her to an adverse employment action.

38. On information and belief, other bus drivers who were not African-American Muslim women committed similar or more serious offenses, i.e., suffered traffic accidents, without being denied progressive discipline, and summarily terminated.

39. On information and belief, Defendant replaced Cross' position as a bus driver with someone with similar qualifications who is not a member of the same protected class, i.e., not an African-American Muslim woman, who displays her faith by wearing a Hijab.

**SECOND CAUSE OF ACTION**
**Retaliation**
**In Violation of California Fair Employment & Housing Act**
**Government Code § 12940 *et. seq.*, and Title VII of the Civil Rights Act of 1964**

40. Plaintiff re-alleges and incorporates herein by reference all of the above paragraphs, as though fully set forth herein.

41. Plaintiff Cross engaged in the following protected activities:

   a. Requesting religious accommodation to wear a Hijab as her religious expression in January, 2019;

   b. Reporting harassment by supervisor Sophia to human resources in February, 2019;

   c. Reporting harassment by a coworker and supervisor Aileen in April, 2019.

42. Subsequent to these protected activities, CCCTA management, Human Resources and Supervisor Aileen grasped the first opportunity to discipline Plaintiff Cross by issuing her a termination the same day Plaintiff suffered a minor traffic accident.

43. Defendant issued this termination to Plaintiff Cross based entirely on hearsay, and without waiting for a police report or allowing plaintiff to review the video and participate in a meaningful discussion of the basis for termination.

44. In retaliation for plaintiff's protected conduct, defendant's management drew up further false pretext for the discriminatory termination, and simply "rubber stamped" the decision to terminate Plaintiff Cross.

45. Plaintiff's termination was in retaliation for exercising her First Amendment rights to engage in religious expression, and for opposing racial and religious harassment and discrimination, as protected by Title VII of the Civil Rights Act of 1964.

**THIRD CAUSE OF ACTION**
**HARASSMENT– Race and Religion**
**In Violation of California Fair Employment & Housing Act**
**Government Code § 12940 *et. seq.* and Title VII of the Civil Rights Act of 1964**

46. Plaintiff re-alleges and incorporates herein by reference all of the above paragraphs, as though fully set forth herein.

47. Plaintiff was made to endure a hostile and intimidating workplace on account of her religion, Muslim, and her religious practice of wearing a Hijab. Specifically, Cross was subjected to verbal harassment by supervisors and coworkers alike, and when Plaintiff

complained to human resources, CCCTA failed to undertake a meaningful investigation of plaintiff's complaint and it failed to address let alone remedy the inappropriate and harassing workplace conduct.

48. The harassment Plaintiff experienced was both severe and pervasive, and was intimidating, hostile and offensive, causing Cross considerable anxiety and emotional distress.

49. The California Fair Employment and Housing Act, Government Code § 12940(k), as well as Title VII, make it an unlawful employment practice for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

50. Plaintiff Cross twice reported harassing and discriminatory conduct to Defendant's human resources, but Defendant took no action to address the harassment and discrimination Plaintiff Cross complained about.

51. Instead of taking appropriate action to prevent discrimination and harassment, Defendant singled out Plaintiff Cross for unduly harsh discipline, terminating her employment under circumstances that were obviously discriminatory and retaliatory, all in violation of Defendant's obligations under the Government Code to prevent discrimination and harassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shannon Cross respectfully requests the following relief:

1. Declaratory Relief, declaring that Defendant violated Plaintiff's right to be free of discrimination, harassment and retaliation in the workplace;

2. Injunctive Relief, compelling Defendants to refrain from discrimination in the workplace; reinstating Plaintiff with appropriate accommodations for Plaintiff's religion; and adopting such policies and practices as this court deems just and proper; requiring Defendant to provide management training on the subjects of harassment, retaliation and discrimination, including specific training on the accommodation of Muslim religious practices;

3. Back pay and wages and loss of other benefits due as a result of her wrongful termination, in an amount to be determined at trial;

4. Compensatory non-economic damages, including, but not limited to, pain, suffering and emotional distress, in an amount according to proof at trial.

5. Plaintiff's reasonable attorney's fees and costs.

6. Prejudgment interest;

Together with such other relief as this Court deems just and proper.

Dated: February 24, 2021
Westlake Village, California

Respectfully submitted,

CHURCH STATE COUNCIL
LAW OFFICE OF JEREMY L. FRIEDMAN

*s/ Alan J Reinach*

_____
By:   Alan J. Reinach, Esq.
        Attorneys for Plaintiff Shannon Cross