UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON CROSS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CENTRAL CONTRA COSTA TRANSIT AUTHORITY,<br><br>　　　　Defendant. | Case No. 21-cv-01312-JST<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 56 |

Before the Court is Defendant Central Contra Costa Transit Authority's ("CCCTA") motion for summary judgment. ECF No. 56. The Court will grant the motion.

## I.　BACKGROUND

CCCTA is a joint powers authority formed by eleven jurisdictions to provide public transportation and paratransit services in central Contra Costa County. In the summer of 2018, CCCTA hired Plaintiff Shannon Cross, a Black Muslim woman, as a transit operator trainee. Cross Dep. at 108:8–20, ECF No. 56-3; Cross Decl. ¶ 1, ECF No. 76. As part of her Muslim faith, Cross wears a hijab to cover her natural hair. Cross Decl. ¶ 2. During orientation, Cross learned that CCCTA had a policy prohibiting employees from wearing head wear. *Id.* ¶ 4. To comply with this uniform policy, she wore a wig to cover her hair during her probationary period. *Id.* ¶ 7. After completing her probationary period in February 2019, Cross requested that she be permitted to wear her hijab. Cross Dep. at 163:12–165:2; Cross Decl. ¶¶ 13, 17. Initially she asked one of her supervisors, Preston Ennis. Cross Decl. ¶ 13. However, he told her he was unaware of the company's policy and said he would get back to her. *Id.* He left CCCTA before giving Cross an answer. *Id.* Cross then asked Kristina Martinez in human resources who gave her an accommodation form. *Id.* ¶¶ 17, 19. CCCTA granted this request, permitting her to wear a hijab

consistent with CCCTA's uniform policy which required she wear certain "regulatory solid color choices." Cross Dep. at 170:13–21, Martinez Decl., Ex. A., ECF No. 56-2; Cross Decl. ¶ 20. On February 13, 2019, Transportation Director Yvette Glenn emailed all supervisors informing them that Cross had been approved to wear a hijab consistent with CCCTA's uniform requirements. Glenn Decl., Ex. G, ECF No. 56-1.

Sometime after CCCTA approved Cross's request to wear her hijab, supervisor Sophia Martinez Morris chased after her on the stairs to the parking lot and said she could not "wear that" referring to Cross's hijab. Cross Dep. at 175:14–178:23; Cross Decl. ¶ 21. Cross reported this incident to Martinez, who reminded Morris that CCCTA had approved the color of Cross's hijab. Cross Dep. at 182:22–183:22. Sometime after, Morris announced in the breakroom to all bus operators that she would be disciplining operators who wore unauthorized head wear, such as snap hats, fisherman hats, fedoras, and headbands. Cross Dep. at 184:4–185:5; Cross Decl. ¶ 30. Another operator, looking at Cross as he walked by, said "now I am going to wear my hat for religious purposes." Cross Dep. at 185:2–5; Cross Decl. ¶ 32. Although Morris was present, she did not say anything to this other bus operator. Cross Dep. at 185:7–14. Cross reported the incident to Human Resources Director, Lisa Rettig, who responded: "some people are stupid." Cross Dep. at 185:18–186:8. Cross was approached again, this time by Transit Manager Aline Carroll, who said Cross could not wear "that thing," referring to Cross's hijab. Cross Dep. at 187:16–188:3; Cross Decl. ¶ 41. Cross again reported the incident to Rettig. Cross Dep. at 188:19–190:1.

On Thursday, May 30, 2019, while on her bus route, Cross was involved in a collision with a bicyclist. Glenn Decl., Exs. H, I, J. Cross contacted CCCTA dispatch and informed them that the bicycle had run into the bus. Glenn Decl., Exs. H, J at 1, 3–7; Cross Dep. at 206:14–207:25. Police officers arrived at the scene. Glenn Decl., Exs. I, J at 7. That same day, the police went to CCCTA's administrative office and requested to view the video from the on-board cameras of the bus. Glenn Decl. ¶ 9. Director of Transportation Yvette Glenn and Transportation Managers Aline Carroll and Miguel Duenas also watched the on-board video. *Id.* The police determined that Cross was at fault for the collision and that she violated California Vehicle Code Section

United States District Court
Northern District of California

21760(b), which requires drivers to remain at a "safe distance" from any bicycle proceeding the same direction as the driver and to "not interfere with the [bicycle's] safe operation." Glenn Decl., Ex. I at 4–5. CCCTA likewise concluded that Cross was at fault and violated California traffic laws and numerous work rules, including rules requiring that bus operators proceed only when safe to do so, regardless of the right-of-way; remain alert and fully aware of traffic and pedestrians in the immediate area; and perform all duties to the best of their abilities and in accordance with written and unwritten standards, policies, and practices. Glenn Decl., Ex. K. CCCTA issued Cross a notice of intent to terminate. *Id.*

On June 7, 2019, CCCTA had a *Skelly* hearing for Cross. Glenn Decl. ¶ 13, Ex. M at 1; Cross Dep. at 248:5–14. During the hearing, Cross claimed that an alarm on the bus was distracting her. Glenn Decl., Ex. M at 1. As a result, CCCTA reviewed additional on-board audio and video footage but did not hear an alarm at the time of the collision. *Id.* This additional footage review revealed that Cross had run 30 stop signs and red lights, used her phone while the bus was in revenue service, and failed to stop at BART crosswalks. Glenn Decl. ¶ 13, Ex. M at 1–3. Accordingly, Glenn determined Cross's termination was appropriate. Glenn Decl., Ex M at 3.

On or around June 20, 2019, the Union grieved Cross's termination. Glenn Decl., Ex. P. The grievance included a statement by Cross in which she claimed that her termination was discriminatory because another bus operator struck a bicyclist but received less severe discipline. *Id.* Cross later revealed that individual was bus operator Ronnette Brown. Glenn Decl., Ex. Q; Cross Dep. at 300:3–13. CCCTA denied Cross's grievance, explaining that Brown's conduct and circumstances were dissimilar: CCCTA had employed Brown for over 25 years; she had demonstrated safe driving skills; and the police determined she was not at fault for the collision. Glenn Decl., Exs. Q, R at 2.

On February 24, 2021, Cross brought this action against CCCTA for (1) discriminatory termination; (2) retaliation; and (3) harassment in violation of both Title VII and California's Fair Employment and Housing Act ("FEHA"). ECF No. 1.

**II.    JURISDICTION**

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## III.    EVIDENTIARY OBJECTIONS

In its reply, CCCTA raises various objections to evidence Cross presented in her opposition.  ECF No. 82 at 19–20.  CCCTA's objections are overruled.  Cross's motion to file a sur-reply to address these evidentiary objections is denied as moot.  ECF No. 87.[1]

## IV.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations.  *Id.* at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists.  *Id.* at 1103.  It is not the court's duty "to scour the record in search of a genuine issue of triable fact"; instead, the nonmoving party must "identify

---

[1] Cross also requested leave to file a sur-reply to address new evidence and arguments presented in CCCTA's reply.  ECF No. 87.  The Court construes the request as an objection to the introduction of new evidence, and sustains the objection as to the reply declaration of Yvette Glenn.  The balance of Cross's objections are overruled.  *See Garcia v. Biter*, 195 F. Supp. 3d 1131, 1134 (E.D. Cal. 2016) ("Defendants, however, did *not* provide any new evidence in the reply to Plaintiff's opposition nor did Defendants raise new issues or arguments.  Rather, Defendants cited to the record, their Motion, and various legal authorities and substantively addressed those new issues raised by Plaintiff in his opposition." (emphasis in original)).

United States District Court
Northern District of California

with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). If the nonmoving party fails to make the required showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## V.    DISCUSSION

### A.    Religious Discrimination

Cross alleges she was terminated in violation of Title VII and FEHA, which prohibit an employer from discriminating against an individual with respect to the terms, conditions, or privileges of their employment because of her religion. Cross bears the burden of proving her prima facie case of religious discrimination. *Chuang v. Univ. of Cal. Davis*, *Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "To establish a prima facie case, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination." *Cordova v. State Farms Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (internal quotation marks, alterations and citation omitted). "The prima facie case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas*, or by more direct evidence of discriminatory intent." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Under the *McDonnell Douglas* framework a plaintiff may make out a prima facia case by showing: (1) they belong to a protected class; (2) they were qualified to do the job; (3) they were subject to an adverse employment action; and (4) the employer treated similarly situated employees outside of the plaintiff's class more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). If the plaintiff makes out a prima facie case, the burden shifts to the employer to produce evidence of "a legitimate, nondiscriminatory reason" for the adverse employment action. *Bergene v. Salt River Project Agric. Imp. & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001). If the employer satisfies that burden, then the burden shifts back to the plaintiff to show that the "proffered reason was a pretext for the discrimination." *Id.*

Despite Cross's argument to the contrary, she presents no direct evidence of

discrimination.  Direct evidence of discriminatory intent consists of "evidence which, if believed, proves the fact [of discriminatory animus] *without inference or presumption*."  *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 662 (9th Cir. 2002) *as amended* (July 18, 2002) (alteration and emphasis in original) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."  *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005).  Cross contends that the statements of two supervisors, Morris and Carroll, constitute direct evidence of discrimination.  ECF No. 75 at 19.  Specifically, after Cross clocked out one day and was walking to the parking lot, she was approached by Morris who told her she could not "wear that" referring to Cross's hijab.  Cross Decl. ¶ 21.  On a separate occasion, Carroll told her she "could not wear 'that thing' on [her] head" referring to Cross's hijab. *Id.* ¶ 41.  These statements, however, do not lead inevitably to the conclusion that Morris and Carroll harbored discriminatory animus against Muslims; it is possible that Morris and Carroll were merely attempting to enforce the dress code.  Concluding from these statements that Marris and Carroll harbored discriminatory intent requires an inferential step.  The Court cannot find discriminatory intent "[w]here there are 'obvious alternative explanations for the purportedly unlawful conduct and the purposeful invidious discrimination plaintiff asks us to infer.'"  *Hittle v. City of Stockton, California*, 101 F.4th 1000, 1014 (9th Cir. 2024) (quoting *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 276 (1st Cir. 2022)).

Thus, the Court considers whether Cross has made out a prima facie case under the *McDonnell Douglas* framework.  CCCTA does not dispute Cross is a member of a protected class, was qualified to do the job, and was subject to an adverse employment action.  ECF No. 56 at 18–22.  Accordingly, the only issue is whether Cross has put forth evidence that CCCTA treated similarly situated employees outside of Cross's class more favorably, or whether other circumstances surrounding her termination give rise to an inference of discrimination.

Cross points to Brown as a similarly situated, non-Muslim, individual who was treated more favorably.  ECF No. 75 at 23.  CCCTA responds that the two are not similarly situated.  ECF No. 56 at 19–21.  "In order to show that the 'employees' allegedly receiving more favorable

United States District Court<br>Northern District of California

6

treatment are similarly situated . . . the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).  While Cross and Brown both had accidents involving a bicyclist while operating a bus, the Court agrees with CCCTA that the two were not similarly situated in all material respects.  In Brown's case, the police found that the bicyclist was at fault for the collision, whereas the police found Cross caused the collision she was involved in, by violating California Vehicle Code Section 21760(b).  Glenn Decl., Exs. I, R at 2; Glenn Dep. at 149:11–15; Cross Dep. at 352:23–353:14.  Although CCCTA initially prepared a notice of intent to terminate Brown's employment, the Union successfully appealed CCCTA's finding that her collision was preventable and her fault.  Glenn Decl., Exs. S, T; Glenn Dep. at 155:2–9.  By contrast, the Union and Cross never disputed that the collision was her fault or preventable.  Cross Dep. at 244:16–248:4; Glenn Decl., Exs O, P.  Moreover, Brown worked for CCCTA for over 25 years where Cross had been employed for less than a year.  Glenn Decl., Exs Q, N; *see Tyson v. Gannett Co.*, 538 F.3d 781, 784 (7th Cir. 2008) (citation omitted) (length of employment if it "is something that an employer must credit when making employment decisions," will "tend to make two employees dissimilar for purposes of the plaintiff's prima facie case").  In short, there were significant differences between them.

Nor do the other bus drivers Cross identifies qualify as similarly situated employees outside of her class.  For one, Cross does not submit evidence regarding whether these bus drivers were outside of her protected class.  In fact, CCCTA presents evidence that at least one of these drivers is himself a practicing Muslim.  Sadat Decl. ¶ 3, ECF No. 82-4.  Moreover, none of the other incidents involved a pedestrian or bicyclist.  *See Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003) (finding that plaintiff was not similarly situated to comparator because comparator "did not engage in problematic conduct of comparable seriousness to that of" plaintiff).  And Cross fails to supply other details regarding their conduct, the surrounding circumstances, what happened during any *Skelly* hearing or grievance proceedings, or their length of employment.

Cross's other evidence surrounding the circumstances of her termination – specifically, the statements by her two supervisors that she could not wear her hijab – also fail to give rise to an

7

inference of discrimination. Cross Decl. ¶ 21 (describing how Morris approached her in the parking lot and told her she couldn't wear her hijab); *Id.* ¶ 41 (describing how Carroll told her she "could not wear 'that thing' on [her] head" referring to Cross's hijab). Ambiguous comments that are not tied directly to the adverse employment action are "weak evidence and not enough to create an inference of . . . discrimination." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996). Accordingly, Cross has failed to establish a prima facie case of discrimination and CCCTA is entitled summary judgment on her discrimination claim.[2]

### B.    Retaliation

The *McDonnell Douglas* burden-shifting framework also applies to retaliation claims brought under Title VII and FEHA. *See Porter v. Cal. Dep't of Corrs.*, 419 F.3d 885, 894 (9th Cir. 2004); *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108–09 (2007). To make out a prima facie case of retaliation, an employee must show that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision." *Id.* If the employer satisfies that burden, then the burden shifts back to the plaintiff to show that the "proffered reason was a pretext for unlawful discrimination." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007).

CCCTA does not dispute that Cross has made out a prima facie case of retaliation. ECF No. 56 at 24–25. Thus, the burden shifts to CCCTA to articulate "a legitimate, nondiscriminatory reason for the adverse employment action." *Fonseca,* 374 F.3d at 849. CCCTA has met that burden. CCCTA claims it terminated Cross because she was found to be responsible for an accident, and to have violated California Vehicle Code Section 21760(b), when she hit a bicyclist.

---

[2] Cross also claims that CCCTA failed to adequately accommodate her religious beliefs. ECF No. 75 a 16–18. Cross did not make these allegations in her complaint, so they are not properly before the Court. *See Earth Island Inst. v. United States Forest Serv.*, 87 F.4th 1054, 1073 (9th Cir. 2023) ("Since Earth Island did not plead this claim in its complaint, it was not properly before the district court, and fails.").

United States District Court
Northern District of California

Glenn Decl., Exs. K, L, M, O, Q, R.  Accordingly, the burden shifts back to plaintiff to show that CCCTA's proffered reason was pretextual.  *Fonseca*, 374 F.3d at 849.  Cross advances several arguments in an effort to meet her burden.

First, Cross argues that "an employer's failure to conduct a proper investigation can itself be evidence of unlawful pretext."  ECF No. 75 at 20.  The argument is supported by the law, *e.g.*, *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 277 (2009), but not by the facts.  The evidence shows that before issuing the Notice of Intent to Terminate Cross's employment, CCCTA dispatch spoke to Cross at the scene of the collision and CCCTA management reviewed the video of the accident.  Glenn Decl. ¶ 9.  A few days later, CCCTA's manager of training found that the collision was preventable.  Glenn Decl., Ex. L.  CCCTA gave Cross a *Skelly* hearing, during which she claimed that an alarm was distracting her, and the Union requested that CCCTA confirm this through further review of the onboard video.  Glenn Decl., Ex. M.  But that review only made things worse for Cross – not only was there no evidence of an alarm, but the video showed Cross running stop signs and red lights.  CCCTA then performed a further review and confirmed that Cross had committed additional traffic violations over the course of multiple days; that Cross had used her cell phone while in revenue service; and that Cross failed to stop at BART crosswalks.  Glenn Decl., Ex. M.

After Glenn issued the Notice of Termination, Cross grieved her termination and submitted a statement laying out why she believed CCCTA incorrectly terminated her employment.  Glenn Decl., Exs. P, R.  At Step 2 of the grievance process, a different manager, Human Resources Director Rettig, met with Cross and discussed CCCTA's investigation into Cross's claim about her driving record.  Glenn Decl., Ex. Q.  Rettig observed Cross "running stop signs and speeding at Concord BART every day" and concluded that Cross was not "just having a bad day" but that "[s]he repeatedly drives unsafely."  *Id.*  Rettig also investigated Cross's claim about Brown and found "significant differences in the two occurrences."  *Id.*  At Step 3, Assistant General Manager Bill Churchill met with Cross and considered all the evidence, including the video of the incident, radio and phone communications between Cross and dispatch, the police report, Supervisor logs, vehicle defect logs and all documents related to the termination and grievance proceedings

United States District Court
Northern District of California

9

including the notes of those who attended the hearings on behalf of CCCTA. Glenn Decl., Ex R. Churchill came to the same conclusion as the other managers—that Cross "clearly hit the cyclist causing the accident," violated CCCTA work rules, and engaged in an "extremely dangerous and illegal driving practice." *Id.* Cross's Union decided not to escalate the grievance to arbitration. Glenn Reply Decl. ¶ 7. Cross fails to explain why, or offer any evidence that, this investigation was insufficient.

Second, Cross contends that CCCTA's failure to follow its own policies and procedures provide evidence of pretext. ECF No. 75 at 20. The only specific policies Cross points to are CCCTA's "progressive discipline policy," which she contends requires notice and retraining following a preventable collision, and Article 52 of the MOU, "which prohibited the employer from searching through electronic media not directly present in the pending infraction in order to buttress its termination decision." *Id.* at 21. Regarding the former point, the evidence shows that CCCTA's practice and policy of progressive discipline varies depending on the severity of driver's conduct. Glenn testified that following a preventable accident, "the normal course is to give someone, depending on the incident, a written warning, which is the form itself; and then on a second occurrence, to be given a four-hour retraining." Glenn Dep. at 86:14-20. But she also testified that "it all comes back to discipline and the level and the severity of the accident and the occurrence," *id.* at 86:20-22, and that CCCTA "can go straight to termination, depending on the facts and the severity," *id.* at 141:10–13; *see also* Glenn Decl., Ex. E, ECF No. 56-1 at 92 (CCCTA and Union's MOU establishing that "if the seriousness of the infraction warrants, disciplinary action may begin" at termination). Thus, there is no evidence that CCCTA violated its own policies. And Article 52[3] of the MOU does not bar searching electronic media not directly present in the pending infraction. *Id.* at 92–93. Rather, Article 62 provides that CCCTA "may use electronic media evidence as support for employee disciplinary action" but cannot "initiate the review of electronic media solely for the purpose of looking for employee misconduct." *Id.* at 103. It must "have a legitimate business reason, such as but not limited to, a reported or observed

---

[3] Cross cites Article 52 of the MOU in her briefing, but that Article does not say anything regarding electronic media. Cross appears to be referring to Article 62.

United States District Court
Northern District of California

incident, law enforcement request, accident or unreported damage," to review electronic media. *Id.* Cross points to no evidence that CCCTA violated this policy. Instead, the evidence reflects that CCCTA only reviewed video footage beyond the incident in question because the Union requested that CCCTA investigate Cross's claim that an alarm distracted her on the day of the incident and that she was a safe driver. Glenn Decl., ¶ 13, Ex M. In any event, CCCTA's policy gave it the right to review the footage because Cross had been involved in an accident.

Third, Cross contends that other bus operators were treated more favorably, indicating CCCTA's proffered reason for her termination was pretextual. ECF No. 75 at 21–23. However, as explained above, Cross has failed to show that these individuals were similarly situated. *Moran*, 447 F.3d at 755 ("In order to show that the 'employees' allegedly receiving more favorable treatment are similarly situated . . . the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects.").

Finally, Cross contends that she was "falsely" found to have violated the "3 feet" rule, Cal. Veh. Code § 21760, and to have sideswiped a bicyclist. ECF No. 75 at 21–23. The relevant question, however, is not whether the decisionmaker based its termination decision on an "objectively false" version of an employee's conduct, but whether the decisionmaker "honestly believed" the reasons given for the termination. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (emphasis and citation omitted). Given Cross's own admission and the police's finding her at fault, CCCTA had legitimate reasons to believe she was at fault for the accident, and Cross presents no evidence that CCCTA did not honestly believe its proffered reasons.

Because Cross has not shown that CCCTA's legitimate, nondiscriminatory reasons for her termination were pretextual, she has failed to meet her burden on her retaliation claim and CCCTA is entitled to summary judgment.

### C.   Hostile Work Environment

To make out a prima facie hostile work environment claim under Title VII and FEHA, Cross must prove that: (1) she was subjected to verbal or physical conduct of a religious nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive

to alter the conditions of her employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642; *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006). "Courts determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016) (internal quotation marks and citation omitted).

Cross bases her harassment claim on three incidents. First, on the stairs going to the parking lot, supervisor Morris came running behind her and said that she could not "wear that," referring to Cross's hijab. Cross Dep. at 175:14–178:23; Cross Decl.¶ 21. Second, another employee remarked that he would like to wear his hat for religious purposes. Cross Dep. at 185:2–5; Cross Decl. ¶ 32. Third, supervisor Carroll told her she could not wear "that thing," referring to Cross's hijab. Cross Dep. at 187:16–188:3; Cross Decl. ¶ 41. This conduct, even viewed in the light most favorable to Cross, is not severe or pervasive enough to constitute a hostile work environment. In *Vasquez*, the plaintiff's colleague told him he had "'a typical Hispanic macho attitude' and that he should consider transferring because 'Hispanics do good in the field.'" 349 F.3d at 643. The same colleague also yelled at him in front of the youth they supervised and made continual, false complaints about the plaintiff to their supervisor. *Id.* The Ninth Circuit found that these events were not severe or pervasive enough to constitute a hostile work environment. *Id.* The incidents here are less severe and pervasive than in *Vazquez*—Cross relies on three incidents in her year-long employment. Accordingly, CCCTA is entitled to summary judgment on Cross's hostile work environment claim.[4]

/ / /

[4] Cross also contends that CCCTA engaged in *quid pro quo* religious harassment. ECF No. 14–15. However, the Ninth Circuit has not recognized a claim for *quid pro quo* religious harassment. *See Quinones v. Donahoe*, No. 1:13-cv-1553, 2014 WL 2524429, at *3 (E.D. Cal. June 4, 2014). Regardless, Cross has not presented sufficient evidence of *quid pro quo* harassment. *See Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1175–76 (9th Cir. 2003) (finding plaintiff did not present sufficient evidence of *quid pro quo* harassment when she produced no evidence connecting any discussion of her job duties with Wiggins's requests that she engage in sexual acts with him.)

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, CCCTA's motion for summary judgment is granted.  The Clerk shall enter judgment and close the case.

**IT IS SO ORDERED.**

Dated:  September 3, 2024



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California